DAVIS v AUTO-OWNERS INSURANCE COMPANY

Docket Nos. 56434, 58249. Submitted March 3, 1982, at Lansing.—
Decided May 20, 1982. Leave to appeal applied for.

Plaintiffs, Gene and Doradean Davis, filed suits against defendants, Auto-Owners Insurance Company (Auto-Owners), Hanover Insurance Company (Hanover), Transamerica Insurance Corporation of America (Transamerica), and others seeking no-fault insurance benefits for injuries sustained in an accident involving a parked tow truck and a moving vehicle. Plaintiff Gene Davis was outside the tow truck operating the truck's winch when struck by the moving vehicle. The Attorney General, as intervening plaintiff, sought an order granting reimbursement from Auto-Owners to the Department of Social Services for medicaid payments made on plaintiffs' behalf. In separate orders the Ingham Circuit Court, Thomas L. Brown, J., found Auto-Owners to be primarily liable for plaintiffs' no-fault benefits, denied Auto-Owners' request for a workers' compensation setoff and granted summary judgments in favor of Hanover and Transamerica. The court also entered an order granting reimbursement to the Department of Social Services. Auto-Owners appeals from the orders, except as to the Department of Social Services, as of right and by leave granted. The cases were consolidated on appeal. *Held:*

1. Plaintiff, Gene Davis, met the threshold requirement for entitlement to no-fault benefits by establishing that he suffered accidental bodily injury arising out of the ownership, operation, maintenance or use of a moving motor vehicle as a motor vehicle.

2. Gene Davis was an "occupant" of the tow truck at the time he incurred his injuries, therefore, the trial court did not err in finding Auto-Owners, the insurer of the tow truck, liable for his no-fault benefits.

3. The trial court correctly determined that Auto-Owners was

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 7 Am Jur 2d, Automobile Insurance § 354.
    Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.
[5, 6] 7 Am Jur 2d, Automobile Insurance § 368.

not entitled to set off workers' compensation benefits since Davis's employer did not maintain workers' compensation insurance and, thus, Davis will never receive such benefits.

Affirmed.

ALLEN, J., concurred with the majority except for their determination that Auto-Owners was not entitled to a setoff. He would reverse the denial of a setoff of an amount equal to the workers' compensation benefits required to be provided under state law.

## OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — ENTITLEMENT TO BENEFITS.

A claimant must establish that he has suffered accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle in order to be entitled to no-fault benefits (MCL 500.3105; MSA 24.13105).

2. INSURANCE — NO-FAULT INSURANCE — PARKED VEHICLE EXCEPTION — MOVING VEHICLES.

A claimant for no-fault insurance benefits is not required to demonstrate that his case falls within one of the three exceptions to the parked vehicle exclusion provision of the no-fault act in order to recover no-fault benefits, even though the case involves a parked vehicle, where his injuries arise, at least in part, out of the operation of a moving motor vehicle as a motor vehicle (MCL 500.3106; MSA 24.13106).

3. INSURANCE — NO-FAULT INSURANCE — MULTIPLE VEHICLE ACCIDENTS — PRIORITY OF LIABILITY.

The liability of each of the insurance carriers of vehicles involved in a multiple vehicle accident causing personal injury is governed by the priority sections of the no-fault act; such sections make a distinction based upon whether or not the injured claimant was an "occupant" of a vehicle at the time of the injury (MCL 500.3114, 500.3115; MSA 24.13114, 24.13115).

4. INSURANCE — OCCUPANT — AUTOMOBILES — NO-FAULT INSURANCE — MULTIPLE VEHICLE ACCIDENTS.

The determination whether a claimant for no-fault insurance benefits was an "occupant" of a vehicle at the time of his injury is not a controlling factor in determining whether he is entitled to no-fault benefits as a result of an accident involving two vehicles; in an accident involving two vehicles occupancy becomes important primarily in determining which carrier or carriers are liable to the claimant.

5. Insurance — No-Fault Insurance — Worker's Disability Com-
pensation Act — Setoff.

The no-fault act requires a setoff of benefits to which a plaintiff is
entitled under the Worker's Disability Compensation Act only
where such benefits are actually received by the plaintiff (MCL
418.101 *et seq.*, 500.3109[1]; MSA 17.237[101] *et seq.*,
24.13109[1]).

Partial Concurrence and Partial Dissent by Allen, J.

6. Insurance — No-Fault Insurance — Worker's Disability Com-
pensation Act — Setoff.

*A defendant who is found liable to pay personal protection
insurance benefits under the no-fault act should be able to
deduct from that amount an amount equal to workers' compen-
sation benefits payable to the injured plaintiff, notwithstanding
the fact that no such benefits are actually received by the
plaintiff (MCL 418.101 et seq., 500.3109[1]; MSA 17.237[101] et
seq., 24.13109[1]).*

*Church, Wyble, Kritselis, Anderson & Robinson,
P.C.* (by *Thomas H. Hay*), for plaintiffs.

*Foster, Swift, Collins & Coey, P.C.* (by *Steven L.
Owen*), for Hanover Insurance Company.

*Stanton, Bullen, Nelson, Moilanen & Klaasen,
P.C.,* for Transamerica Insurance Company of
America.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *C.
Mark Hoover*), for Auto-Owners Insurance Com-
pany.

Before: M. F. Cavanagh, P.J., and Allen and
E. C. Penzien,* JJ.

E. C. Penzien, J. Plaintiffs, Gene and Doradean
Davis, filed suit against defendants, Auto-Owners
Insurance Company (Auto-Owners), Hanover In-
surance Company (Hanover), and Transamerica

* Circuit judge, sitting on the Court of Appeals by assignment.

Insurance Corporation of America (Transamerica), seeking no-fault benefits for injuries sustained by Gene Davis in an accident that occurred on December 16, 1979. The accident involved a parked tow truck, insured by Auto-Owners, and a moving vehicle, insured by Hanover. Transamerica insured the vehicle which the tow truck was servicing at the time of the accident. In its orders dated February 19, 1981, and May 13, 1981, the trial court found Auto-Owners to be primarily liable for plaintiffs' no-fault benefits.

The procedural history of this case is complicated and need not be set forth in full to resolve the issues raised herein.

However, we do note that the February 19, 1981, order granted summary judgment to plaintiffs and held Auto-Owners primarily liable for plaintiffs' no-fault benefits. The order also denied Auto-Owners' cross-motion for summary judgment and/or partial summary judgment in regard to primary liability for first-party coverage and workers' compensation setoff, and granted summary judgment in favor of Hanover against plaintiffs in that the primary first-party liability rested upon Auto-Owners. On February 24, 1981, an order was entered granting summary judgment in favor of Transamerica.

Auto-Owners filed a claim of appeal from the February 19, 1981 order. However, this claim was returned by this Court on the ground that the appeal was interlocutory and leave to appeal was required. In May of 1981, Auto-Owners moved, in the trial court, for reconsideration of the order of February 19, 1981, as to the setoff issue.

In April of 1981, the Attorney General, as intervening plaintiff, requested an order granting reimbursement from Auto-Owners to the Department

of Social Services for medicaid payments made on plaintiffs' behalf. On May 13, 1981, an order was entered granting reimbursement to the Department of Social Services. This order also repeated the significant clauses of the February 19, 1981 order. Auto-Owners filed a claim of appeal as of right from the May 13, 1981 order. Subsequently, a stipulation was filed removing the issue of reimbursement to the Department of Social Services from that appeal.

Meanwhile, a hearing was held on Auto-Owners' notice for reconsideration of the February 19, 1981 order. The trial court noted that whether plaintiff was an employee and injured in the course of his employment was disputed in the present case, and ruled that Auto-Owners is entitled to a setoff of workers' compensation benefits only if plaintiff Gene Davis is, in fact, awarded benefits through the workers' compensation process.

In June of 1981, Auto-Owners filed an application for leave to appeal from the February 19, 1981 order raising the same issues as were raised in the appeal from the May 13, 1981 order. We granted Auto-Owners' application and consolidated both appeals.

I

The parties have stipulated to the following facts:

"The plaintiff Gene Davis was severely injured in an auto accident that took place on December 16, 1979. At the time of the accident the plaintiff contends that he was employed by * * * Waldo Auto Sales, although there is a dispute as to whether the plaintiff was in the course and scope of his employment at the time of the

accident. * * * Auto-Owners insured that tow truck under a standard no-fault insurance policy.

"On December 16, 1979 the plaintiff had taken the tow truck to the scene of the accident (the intersection of I-96 and Grand River) to assist a stranded motorist, Beatrice M. Archambeault. The plaintiff drove the tow truck to the right shoulder of eastbound I-96. He got out of the truck and hooked up the stranded car to the tow truck. He spent approximately 20 minutes outside the cab of the tow truck hooking the car up before the accident occurred.

"After the car was hooked up to the tow truck, the plaintiff stood at the left rear corner of the truck and began winching the stranded car out of the ditch. At that time he was standing with both feet on the ground, one hand on the clutch lever and one hand on the power take-off lever mounted at the rear of the tow truck, operating the winch. As he was performing this operation, a motor vehicle driven by Anne Ranhoff, went out of control as it was proceeding on eastbound I-96. With his hands still on the controls, Mr. Davis turned and looked over his right shoulder and saw the Ranhoff vehicle approaching. Mr. Davis then placed his right foot in a "B-ring" welded on the bottom of the tow truck. On impact, his right leg was still in the B-ring, and his left leg was hanging beside the right leg. The Ranhoff vehicle struck the plaintiff causing severe injuries. There was no malfunction of the truck or the winch mechanism.

"The plaintiff testified at his deposition that in his opinion the sole cause of the accident was Ms. Ranhoff's loss of control of her vehicle. However, the plaintiff's attorney has also claimed in this lawsuit that there were other causes of the accident; these claims relate to product liability claims against the defendant Sperry Corporation (defective design of winch) and the defendant Auto Truck Service (defective design and installation). There is also a claim that the defendant Archambeault was negligent for placing the plaintiff in a dangerous situation and failing to warn the plaintiff of the danger.

"The plaintiff received no workers' compensation ben-

efits from his employer. The plaintiff's employer had no workers' compensation insurance.

"The defendant Hanover insured the vehicle being driven by Ms. Ranhoff. The defendant Transamerica insured the stranded vehicle owned by Ms. Archambeault."

Although it is not clear from the above stipulated facts, the winch mechanism runs off the engine of the tow truck, and the engine was running at the time the accident occurred. The caution lights on the tow truck were also flashing. Finally, plaintiff Gene Davis did not maintain no-fault insurance on his own private vehicle.

## II

As a threshold requirement for entitlement to no-fault benefits, a claimant must establish that he has suffered accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. MCL 500.3105; MSA 24.13105. See also *Shinabarger v Citizens Ins Co*, 90 Mich App 307, 314-315; 282 NW2d 301 (1979), *lv den* 407 Mich 895 (1979). This requirement has been met in the instant case, as it is obvious that plaintiff Gene Davis's injuries arose, at least in part, out of the operation of a (moving) motor vehicle as a motor vehicle. In this regard, we note that even though the instant case also involved a parked vehicle (*i.e.,* the tow truck) plaintiffs are not required to demonstrate that they fall within one of the three exceptions to the parked vehicle exclusion provision of the no-fault act, MCL 500.3106; MSA 24.13106, in order to recover no-fault benefits. *Kalin v Detroit Automobile Inter-Ins Exchange*, 112 Mich App 497; 316 NW2d 467 (1982) and *Gutierrez v Dairyland Ins*

*Co,* 110 Mich App 126; 312 NW2d 181 (1981). But, see *Heard v State Farm Mutual Automobile Ins Co,* 93 Mich App 50; 286 NW2d 46 (1979), *lv gtd* 408 Mich 896 (1980), which applied the parked vehicle exception where the accident involved a parked vehicle and a moving vehicle.

### III

Having concluded that plaintiffs are entitled to no-fault benefits, it is necessary to determine which insurance carrier is responsible for those benefits.

In this regard, Auto-Owners argues that the trial court erred in finding it primarily liable to plaintiffs. Auto-Owners reasons that since plaintiff Gene Davis was outside the tow truck for 20 minutes prior to the accident, he was not an occupant of the tow truck at the time of the accident. Therefore, according to Auto-Owners, the priority provisions of the no-fault act require the carriers of each of the vehicles involved in the accident to share liability. See MCL 500.3115; MSA 24.13115.

The liability of each carrier is governed by the priority sections, MCL 500.3114; MSA 24.13114 and MCL 500.3115; MSA 24.13115, of the no-fault act. Section 3114 applies if Gene Davis was an occupant of the tow truck at the time of the accident. Section 3115 applies if he was not an occupant of the tow truck at the time of the accident.

The leading pre-no-fault case interpreting whether someone was an "occupant" of a motor

vehicle is *Nickerson v Citizens Mutual Ins Co,* 393 Mich 324; 224 NW2d 896 (1975).

In that case the plaintiff, Nickerson, was a passenger in the insured vehicle. After the vehicle had stalled he helped push it to the side of the road. A passing motorist was flagged down to provide assistance and Nickerson, who had returned to the vehicle, exited once again and was walking around the front of that vehicle when a third vehicle struck the stalled vehicle from behind pushing it into Nickerson, who sustained severe injuries. The *Nickerson* Court interpreted the term "occupying" as used in the insurance contract at issue in that case and found that Nickerson was entitled to recovery for his injuries. The Court supported its conclusion that Nickerson was an "occupant" of the insured vehicle by noting that he had physically occupied the vehicle immediately prior to the accident, that he was in physical contact with the vehicle at the time of the injury, and that the injury arose out of the use or repair of a vehicle.

*Nickerson's* broad interpretation of the term "occupant" of a motor vehicle has been cited with approval and used in a number of subsequent cases brought under the no-fault act. See, for example, *Ottenwess v Hawkeye Security Ins Co,* 84 Mich App 292, 301-302; 269 NW2d 570 (1978), *rev'd* 408 Mich 164; 289 NW2d 708 (1980), *Hathcox v Liberty Mutual Ins Co,* 90 Mich App 511, 515-517; 282 NW2d 374 (1979), and *McPherson v Auto-Owners Ins Co,* 90 Mich App 215; 282 NW2d 289 (1979), *lv den* 407 Mich 908 (1979).

However, the continuing validity of applying the *Nickerson* definition of the term "occupant" to no-

fault actions was brought into question in this Court's recent opinion in *Kalin, supra.*

As the *Kalin* opinion points out, *Nickerson* was concerned with the interpretation of the term "occupant" as used in an insurance contract, while no-fault actions are, obviously, concerned with the term "occupant" as used in a statute.

Furthermore, although not specifically mentioned in the *Kalin* opinion, we note that the broad definition of the term "occupant" adopted in *Nickerson* might have been premised, at least in part, on the public policy consideration that if Nickerson had not been considered an occupant there would have been no coverage under the insurance contract. Under the no-fault act, at least where there are two vehicles involved, whether a claimant was an "occupant" of a vehicle is not controlling as to whether he is entitled to no-fault benefits. Rather, where there are at least two vehicles involved in an accident, under the priority sections of the no-fault act occupancy becomes important primarily in determining which carrier or carriers are liable to the claimant. Thus, in the instant case, plaintiffs are entitled to no-fault benefits, and whether plaintiff Gene Davis was an occupant of a motor vehicle is only determinative as to which carrier is liable for the benefits.

Without specifically reaching the question as to the continuing validity of *Nickerson* in actions brought under the no-fault act, we find that under the unique facts of the instant case plaintiff Gene Davis was an occupant of the tow truck at the time he incurred his injuries. We base this conclusion on, among other things, the fact that immediately prior to the accident plaintiff was operating

the levers on the back of the tow truck, winching
the disabled vehicle onto the truck, and upon the
fact that he had direct physical contact with the
truck *(i.e.,* he had placed his right foot in the "B-
ring" welded to the side of the truck) at the time
of the accident. Apparently, although it is not
absolutely certain from the stipulated facts, both
of Davis's feet were off the ground at the time of
impact.

Because plaintiff Gene Davis was an occupant of
the tow truck at the time of the accident the
priority provisions of § 3114 control and Auto-
Owners is liable to plaintiffs for no-fault benefits.

## IV

As its final issue Auto-Owners argues that if it is
responsible for plaintiffs' no-fault benefits, it
should be entitled to set off workers' compensation
benefits plaintiff Gene Davis would have received
under the Worker's Disability Compensation Act,
MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* had
his employer carried workers' compensation insur-
ance.[1]

Section 3109(1) of the no-fault act, MCL
500.3109; MSA 24.13109, provides:

"Benefits provided or required to be provided under
the laws of any state or the federal government shall be
subtracted from the personal protection insurance bene-
fits otherwise payable for the injury."

In *Perez v State Farm Mutual Automobile Ins
Co,* 105 Mich App 202; 306 NW2d 451 (1981), a

---

[1] We recognize that whether plaintiff Gene Davis was an employee
at the time of the accident is disputed.

divided panel of this Court interpreted § 3109(1) in the manner suggested by Auto-Owners.

The plaintiffs in *Perez* sustained serious injuries when their vehicle collided with a truck. It was undisputed that the plaintiffs were employees of International Mini-Plaza, Inc., and that the injuries were sustained in the course of their employment. However, the corporation employing plaintiffs did not carry workers' compensation insurance. Thus, the plaintiffs argued that the no-fault insurer should not be allowed a setoff for the amount of workers' compensation benefits required by law unless those benefits were actually paid to the employees. The majority in *Perez* disagreed and held that the employer's no-fault carrier was entitled to subtract from no-fault benefits otherwise payable an amount equal to the workers' compensation required to be provided under Michigan law, even though the workers' compensation benefits would not, in actuality, be received. The majority concluded that this result was mandated by the clear and unambiguous language of the statute.

We disagree with the interpretation of § 3109(1) set forth in the majority opinion of *Perez* and find that the language of § 3109(1) is not so clear and unambiguous as to be susceptible of only one interpretation. Thus, we must apply the traditional rules of statutory construction and give effect to the intent of the Legislature which enacted that provision. *Dep't of Treasury v Campbell,* 107 Mich App 561; 309 NW2d 668 (1981).

In this regard, we find that Judge BURNS' dissenting opinion in *Perez* reaches a correct result in finding a setoff of workers' compensation benefits to be inappropriate where the employer does not maintain workers' compensation insurance and

the employee will not, in actuality, ever receive workers' compensation benefits. We also conclude that Judge BURNS' dissenting opinion correctly analyzed the legislative intent behind § 3109:

"Contrary to what the majority believes, I do not believe that the Legislature intended to leave accident victims such as the plaintiffs in the present case without some source of recompense for their injuries. The purpose behind § 3109 of the act is to insure that duplicate benefits are not paid to an accident victim and to coordinate such benefits as the victim may receive. This purpose would not be furthered, rather it would be hindered, by the interpretation given this statute by the majority in this case. Although the majority's opinion cannot [be] said to be without some case law support, see *Moore v Travelers Ins Co*, 475 F Supp 891 (ED Mich, 1979), that opinion works an injustice to employees of employers who have not fulfilled their statutory duty with regard to providing workers' compensation coverage, and it impedes the important policy of this state to provide full and adequate compensation for automobile accident victims." 105 Mich App 208.

Based on the foregoing, we affirm the trial court's determination that Auto-Owners is not entitled to set off workers' compensation benefits.

Affirmed. No costs, interpretation of a statute being central to resolution of this case.

M. F. CAVANAGH, P.J., concurred.

ALLEN, J. *(concurring in part, dissenting in part)*. I agree with Judge PENZIEN's well-reasoned analysis in parts I through III of the majority opinion. I respectfully dissent, however, from part IV of the opinion, for the reasons stated in the majority opinion in *Perez v State Farm Mutual Automobile Ins Co*, 105 Mich App 202; 306 NW2d

451 (1981). As I find no ambiguity in the language of MCL 500.3109(1); MSA 24.13109(1), I believe there is no room for statutory interpretation and would leave the admittedly inequitable result for the Legislature to remedy.

I would reverse the trial court's determination that Auto-Owners is not entitled to set off workers' compensation benefits required to be provided under state law.